SANDS (WOOD v.). See Case No. 17,963.

---

## Case No. 12,307.

### In re SANDS ALE BREWING CO.

[3 Biss. 175; 6 N. B. R. 101; 4 Chi. Leg. News, 137; 1 Bench & Bar (N. S.) 98; 6 Am. Law Rev. 574.] [1]

District Court, N. D. Illinois. Jan., 1872.

BANKRUPTCY—MORTGAGE—COVENANT TO INSURE—RIGHTS OF MORTGAGEE.

1. A covenant in a mortgage to keep the mortgaged premises insured for the benefit of the mortgagee creates a specific equitable lien upon the insurance money, which is valid as against an assignee in bankruptcy.
   [Cited in brief in Chicago Trust & Sav. Bank v. Bentz, 59 Fed. 645.]
   [Cited in brief in Grange Mill Co. v. Western Assur. Co., 118 Ill. 397, 9 N. E. 274. Cited in Nordyke & M. Co. v. Gery, 112 Ind. 539, 13 N. E. 683; Dunlop v. Avery, 89 N. Y. 599.]

2. The mortgage being recorded, the covenant acts upon the insurance as soon as effected, runs with the land, and is notice to creditors; and no subsequent assignment can affect the rights of the mortgagee. It is not necessary that the policies be specifically assigned, nor that the mortgagee select the companies. And any acts of the mortgagor without the consent of the mortgagee will not defeat the effect of the covenant.

3. It seems, that not even a specific assignment to a particular creditor would have avoided the effect of the covenant.

4. Where such covenant is made by a corporation, no subsequent change in the ownership of the stock can change its legal effect.

In bankruptcy.

This was a petition by Francis B. Peabody as trustee, for an order on the assignee of the bankrupt to pay over to the petitioner the proceeds of certain policies of insurance. The bankrupt, a corporation created and existing under the general law of Illinois, on the first day of January, 1868, then being solvent, borrowed, through the petitioner, the sum of $60,000, and to secure the payment thereof executed to him, as trustee, its trust deed bearing date that day, thereby conveying to him as trustee certain lots and parcels of land on which were situate the brewery and buildings occupied and used by the bankrupt for the purposes of its business. This deed contained, among other covenants, the following:

"And the said Sands Ale Brewing Company, for itself and its successors and assigns, does covenant, grant and agree to and with the said party of the second part, and his successors in trust, that it will well and truly pay the said principal sum of money,

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 6 Am. Law Rev. 574, contains only a partial report.]

and interest thereon, mentioned in said principal note, according to the tenor and effect thereof, and will not at any time hereafter, until the said principal sum and the interest thereon shall be fully paid, suffer said premises, or any part thereof, to be sold for any tax or assessment whatsoever, nor do, nor permit to be done, to, in, upon, or about said premises, anything that may in any wise tend to impair the value thereof, or to weaken, diminish or impair the securities intended to be effected under and by virtue of this instrument. And further, that the said Sands Ale Brewing Company, its successors and assigns, shall and will, at all times hereafter, until said principal sum of money, and all arrearages of interest thereon, shall be fully paid, keep all the buildings, outhouses excepted, now situate, or that may hereafter be erected upon said premises, fully insured against loss or damage by fire, in some good and responsible insurance company or companies, (the selection of such insurance company or companies to be left to the option of the said party of the second part, or its successors in trust,) in the fair insurable value of such buildings, and cause such insurance to be made payable, in case of loss, to the said party of the second part, or his successors in trust, and deliver to him or them, each, all and every, the policies of insurance therefor, as soon as and whenever such insurance shall be effected, and all renewal certificates of such policies; * * * and the said party of the second part, or his successors in trust, shall hold each and all such policies of insurance as collateral and additional security for said principal sum of money and interest, and shall have the right to collect and receive any and all money and sums of money that may at any time become collectible or receivable upon each, all and every of such policies of insurance by reason of the damage or destruction of such buildings by fire, and apply the same, when received, in the same manner, as far as possible, as is hereinbefore provided for in case of a sale of said above described premises under the power of sale hereinbefore contained; or, if the legal holder of said principal note so elects, shall disburse the same in the repair or rebuilding of such buildings. * * * A re-conveyance of said premises shall be made by the party of the second part, or his successors in trust, to said party of the first part, its successors or assigns, at its expense, on full payment of the indebtedness aforesaid, and performance of the covenants and agreements made herein by the party of the first part."

Soon after the execution of this deed, and in compliance with this covenant, the bankrupt caused insurance policies on the property to be taken out and assigned to the trustee, and when these policies expired, which was in December, 1868, new policies were taken out, but not assigned or made payable to the trustee, and although policies to a large amount were taken out each succeeding year, they were not assigned or made payable to the trustee, except as to a part of them during the second year. On the 9th of October, 1871, the buildings and improvements on said premises were destroyed by fire, the bankrupt at that time holding policies of insurance to the amount of about $120,000 on the buildings and personal property situate therein; the total value of the buildings being about $200,000. The interest on the debt of $60,000, secured by the deed of trust, had been regularly paid as it fell due, but no part of the principal sum. Up to the time of the fire the corporation was solvent, but soon afterwards it filed a petition in bankruptcy in this district, was duly adjudicated a bankrupt, and the assignee had collected a portion of the money on the insurance policies. The real estate, after the destruction of the buildings, was not adequate security for the amount of the loan.

Paddock & Ide and Samuel W. Fuller, for petitioner.

M. W. Fuller and J. N. Jewett, for assignee.

BLODGETT, District Judge. The petitioner claims that the covenant in the trust deed gives him an equitable lien upon the proceeds of the insurance to the exclusion of the general creditors, while on the part of the assignee and the general creditors it is insisted that the policies in question, not having been assigned to the trustee, nor made specifically payable to him in case of loss, he has no higher right to them than the other creditors, and that the fund, therefore, belongs to the assignee. The bankrupt being a corporation, I do not conceive that any changes which may have taken place in the ownership of its stock since the trust deed was given can affect the question at issue. No matter who buys or sells the stock, or who holds the offices or manages its affairs, the corporate entity remains the same. Its covenant to insure is binding on all stockholders and officers, and all persons in privity with it, and, being on record, is notice to all its creditors. The assignee can hold nothing in this case which the grantor in the trust deed could not have held if bankruptcy had not intervened. His relation is purely representative. Creditors who have trusted the bankrupt must be held to have done so with full notice of the covenant to insure, and of the legal and equitable effect of that covenant. The covenant to insure runs with the land, as much so as a covenant to repair, or rebuild, or for another term, because it is a charge upon the land. Vernon v. Smith, 5 Barn. & Ald. 1, 3; 1 Washb. Real Prop. 426; 4 Kent, Comm. 558; Spencer's Case, 1 Smith. Lead. Cas. Eq. 137.

What then was the effect of that covenant, so far as the right to this insurance money is concerned?

The bankrupt covenanted to insure to the

fair insurable value of the buildings, and to cause the insurance to be made payable, in case of loss, to the petitioner or his successors in the trust. The insurance was effected, but not assigned, nor made payable to the trustee. Can this make any difference? This court must be governed in disposing of this question by substantially the same rules as a court of equity. In 2 Pars. Cont. 440, it is said: "There is authority, strengthened, as we think, by reason, that when a mortgagor is bound by the mortgage contract to keep the premises insured for the benefit of the mortgagee, and does, in fact, keep them insured by a policy which contains no statement that the mortgagee has any interest therein, the mortgagee, nevertheless, has an equitable interest in and a lien upon the proceeds of the policy which a court of equity will enforce for his benefit." See, also, to same point, Thomas' Adm'rs v. Von Kapff's Ex'rs, 6 Gill & J. 372; Carter v. Rockett, 8 Paige, 437; Lazarus v. Commonwealth Ins. Co., 2 Hare & W. Lead. Cas. 834; Nichols v. Baxter, 5 R. I. 491; Norwich Fire Ins. Co. v. Boomer, 52 Ill. 446; Providence Co. Bank v. Benson, 24 Pick. 210; Miltenberger v. Beacom, 9 Pa. St. 198; King v. Insurance Co., 7 Cush. 1; Fland. Ins. 367.

The principle announced in all these cases is but a practical application of the maxim that equity will consider as done what the parties have covenanted to do. But it is objected that the mortgagee, under this covenant, must first select or indicate the companies in which he wishes the insurance effected, before the covenant becomes binding or effective to vest any right in him to the proceeds of the insurance. It would seem a sufficient answer to this objection, that the covenant being to insure to the full insurable value for the benefit of the mortgagee in this case, and the insurance having been effected, it does not lie in the mouth of the mortgagor to say that the mortgagee shall not have the benefit of it because he has acted without the selection or contrary to the selection of the mortgagee. Suppose the mortgagee had selected the companies, and notified the mortgagor, and the latter, in disregard of the selection, had effected insurance in other companies, could such violation of his contract devest the mortgagee of his rights? I think not. But the mortgagor, having effected insurance to nearly, if not quite, the insurable value of the property, has put it out of the mortgagee's power to further insure, because the property can only carry a limited amount. And, therefore, the mortgagee must hold what has been effected, or none. But there seems another answer to this point, arising from the facts in this case. Insurance was effected and assigned, in compliance with the cove-

21 FED.CAS.—23

nant, the first year, and perhaps the second. Was not this a sufficient selection, and was it not the duty of the mortgagor to renew the policies thus effected until notified otherwise by the mortgagee, and if the underwriters have since been changed by the mortgagor, without the mortgagee's consent, this act of the mortgagor cannot be pleaded in equity to defeat the effect of his covenant.

My conclusion then is, that the covenant by the bankrupt to insure operated to assign in equity to the petitioner the benefit of any insurance effected by the bankrupt on the mortgaged property. It is no answer to say that the mortgagee might have insured in default of insurance by the mortgagor, because the mortgagor had insured, and his insurance inured at once to the benefit of the mortgagee. It is urged by way of argument in behalf of one creditor—the Union National Bank—that if all or part of these policies had been assigned to that creditor, it could have been held then as against the petitioner, and that the assignee, holding for the benefit of all creditors, occupies the same position; but this argument is fallacious, because it overlooks or ignores the fact that all creditors had notice of the petitioner's equitable right to this insurance money, and could acquire no valid interest therein as against him. Equity made the assignment the moment the insurance was effected, if the mortgagor did not do it. It is true courts in this country and in England have said that all general liens infringe upon the bankrupt laws, the object of which is to distribute the bankrupt's estate equally, and that equality is equity. But if any one point is carefully guarded by the bankrupt law now in force, it is the protection of all fairly obtained liens, whether legal or equitable in their origin. The authorities quoted, and many others I have consulted in the examination of this case, leave no doubt in regard to the effect to be given this covenant. The lien is neither doubtful nor general, but is clear and specific. It is but carrying out the intent of the parties, and giving the mortgagee the security he had bargained for, and which he had given the whole world notice he was entitled to. The assignee will, therefore, pay to the petitioner the insurance money collected by him on these policies.

NOTE. Where the assured has agreed to insure for the protection of another person having an interest in the property insured, such person has an equitable lien in case of loss upon the money due upon the policy. Ellis v. Kreutzinger, 27 Mo. 311; approved by the New York court of appeals, in Cromwell v. Brooklyn Fire Ins. Co., 44 N. Y. 42, where it is also held that the insurer, having notice of the assignment of a contract providing for such insurance, is liable to the assignee, even though it has actually paid the insurance money to the original vendee,