Ross *v.* Hodges.

## Opinion delivered May 12, 1913.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—ASSIGNEE AND CREDITORS AS BONA FIDE PURCHASERS.—Neither the assignee nor the creditors whom he represents are purchasers for a valuable consideration, without notice, as against prior equitable liens, unless some consideration passes at the time of the assignment. (Page 274.)

2. ASSIGNMENT FOR BENEFIT OF CREDITORS—CONSIDERATION.—Where an assignment for the benefit of creditors is made under an agreement with the creditors, that in consideration of the receipt of their *pro rata* parts of the proceeds of the sale of the property assigned, that they would execute a release in full, it is not supported by a new consideration passing at the time of the assignment, because no new responsibility or liability on the faith of the alleged assignment was incurred by the creditors. (Page 274.)

3. VENDOR AND PURCHASER—PRE-EXISTING DEBT—PAYMENT.—The rule of innocent purchaser for value does not apply when property is assigned simply in payment of a pre-existing debt. (Page 274.)

4. ASSIGNMENT FOR BENEFIT OF CREDITORS—INNOCENT PURCHASERS.—An assignment for the benefit of creditors was made, pursuant to a stipulation that the assignment should not become effective until each creditor had agreed to accept the land conveyed in settlement of all amounts due them, and that until it could be determined whether this could be done, that all actions pending in favor of the creditors should be continued. Some of the creditors did not sign the release of their claims. *Held*, the creditors did not acquire any rights under the purported deed, as against one holding prior equity in the land in controversy. (Page 275.)

5. MORTGAGES—PAYMENT.—When a debt which is secured by a mortgage is paid, the mortgage can not then be held as security for another debt, except by a contract in writing, supported by a sufficient consideration. (Page 275.)

6. MORTGAGES—STATUTE OF FRAUDS.—When the debt secured by a mortgage has been paid, a contract that the mortgage shall thereafter serve as security for another debt, must be in writing. (Page 276.)

Appeal from Greene Chancery Court; *C. D. Frierson*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

This is a suit by appellees, against appellants, to have a vendor's lien declared and enforced on two hundred (200) acres of land in Greene County, Arkansas.

In March, 1909, E. M. Ross entered into a contract

with the appellees, whereby he was to receive a deed to the lands in controversy, and in part consideration therefor was to transfer to the appellees certain real estate, designated in the briefs as the "Bertig lands." The Bertig lands, at the time of the contract, were encumbered by a mortgage in favor of the Cotton Exchange Bank of Kennett, Missouri, for four hundred and fifty dollars ($450), with interest. At the time the contract was entered into Ross represented to the appellees that the mortgage on the Bertig lands would be released and that the mortgagee would take a new mortgage on the lands in controversy. In pursuance of the contract, D. D. Hodges, one of the appellees, executed to Ross a warranty deed to the lands in controversy. On the 8th of May, 1909, Ross executed a warranty deed to R. P. Taylor, in pursuance of an agreement between them, which provided in part as follows:

"Whereas, said first parties have contracted and agreed, and by these presents do hereby contract and agree, to procure, if possible, from each and every creditor of the said Southern Pole & Piling Company an agreement to accept said lands in full and complete settlement of all sums due to said creditors, and when said land shall have been sold and proceeds converted to money, and when the same shall be divided and paid to said creditors, and receipt in full and release thereupon executed to the said Southern Pole & Piling Company and to the said E. M. Ross, and said deed shall be placed of record the said conveyance shall be treated and considered as completed and final."

The Cotton Exchange Bank refused to satisfy the mortgage on the Bertig lands, and the appellees brought this suit, to have a vendor's lien declared and enforced against the lands in controversy, which had been conveyed to Ross as part consideration for the Bertig lands, and the stock of merchandise purchased by the appellees, of Ross, representing the Southern Pole & Piling Company.

It was shown that before the conveyance was made

by Ross to Taylor, Ross informed him of the claim of four hundred and fifty dollars ($450), for which the land was mortgaged. Ross testified as follows:

"The conveyance to Taylor was on consideration that the creditors for whose benefit the conveyance was made could take their *pro rata* out of the price realized from the sale of the lands, and release all claims against me.

"The plaintiffs at that time held a mortgage on another place of mine (the Crunk place) to secure $272.50 of the indebtedness of four hundred and fifty dollars ($450). I paid off the mortgage of $272.50 on the Crunk place, but after I did so the question of satisfying this four hundred and fifty dollars ($450) mortgage came up, and I told Mr. Grady, one of the plaintiffs, that he could still hold the $272.50 mortgage against my farm. But in the meantime they brought this suit, and I made him give the mortgage to me.

"I have lived on the Crunk place since March, 1909. The place was worth about one thousand dollars ($1,000)."

The appellants, in their answer, after alleging the contract under which the deed to Taylor was executed, alleged as follows:

"Defendant, R. P. Taylor, states for himself and for said creditors, that neither he nor they nor any of them, had any knowledge of any right, claim, interest or lien, running in favor of the plaintiffs, or either of them, in and to the lands conveyed to them, in trust for the said creditors, prior to the institution of this suit. They state that the debts to the creditors, which constitute the consideration for the conveyance to Taylor, greatly exceed the value of the lands on which plaintiffs claim a lien."

On behalf of appellants, there was testimony tending to sustain the allegations of their answer.

The court found that the defendant, R. P. Taylor, "received the conveyance from Ross, with constructive notice of an agreement by E. M. Ross, to convey the Bertig lands to plaintiffs free from encumbrances, and that

no new consideration passed to Ross for said conveyance.''

The court divested the title to the Bertig lands out of the defendants, E. M. Ross and the Southern Pole & Piling Company, and decreed that the lands in controversy be sold and that the proceeds of the sale be applied towards the satisfaction of the claim of the Cotton Exchange Bank, and the case is here on appeal.

Other facts stated in opinion.

*Johnson & Burr,* for appellant.

1. Where the facts show that the assignor receives some substantial advantage other than the assurance that the proceeds of the property will be applied to his indebtedness, a sufficient consideration is present to support the *bona fides* of an assignee unaffected with notice of prior liens.

When a creditor, in consideration of the assignment, releases the assignor from personal liability on the debt for the payment of which the assignment is made, the assignee is a purchaser for value and not bound by the undisclosed fraud of the assignor. 59 Miss. 111; 16 L. R. A. 664; Kent's Com. (12 ed.), 464. The chancellor's finding that the defendant Taylor was affected with constructive notice was wrong as a matter of law. Constructive notice could not have resulted except in consequence of want of consideration. 95 Ark. 586.

2. So much of plaintiff's claim as equals the amount due on the mortgage on the Crump place should be disallowed. If there has been no actual satisfaction of record, the mortgage still stands as security to the plaintiffs. 27 Cyc. 1433.

Grady's disregard of the rights of the creditors who accepted the terms of the trust created by the assignment should estop him to claim that which he deprived them of by his own inequitable conduct. 32 Ark. 663; 69 Ark. 224; 89 Ill. 491; 24 Neb. 702, 40 N. W. 132; 128 La. 779; 55 So. 369.

*Block & Kirsch,* for appellees.

1. Appellants' contention that R. P. Taylor purchased for value is mere assumption; there is no proof whatever in the record to that effect. 33 Am. Dec. (Mass.), 733; Burrill on Assignments, § 391; *Id.* § 392.

2. The transaction concerning the Crunk place was between Ross and Grady as individuals; that out of which grew the $450 lien was between Ross and the Southern Pole & Piling Company on the one hand and Hodges, Grady and Cottrell as a firm on the other.

Copartners can be estopped by the acts of a partner only when the matter in which the estoppel is sought to be asserted is within the scope of the partnership business. Bigelow on Estoppel (3 ed.), 469.

None of the elements essential of an estoppel *in pais* exist in this case. Bigelow on Estoppel (3 ed.), 72; Pomeroy, Eq. Jur., § 802.

Wood, J., (after stating the facts). 1. The prevailing rule is that "Neither the assignee nor the creditors whom he represents are purchasers for a valuable consideration, without notice, as against prior equitable liens. There must be some consideration passing at the time of the assignment, some new responsibility incurred, or some rights given up, to invest an assignee with this character." Burrill on Assignments, page 482 (6 ed.).

The appellees contend that the case at bar is taken out of the operation of this rule, because the purported assignment here was made under an agreement with the creditors, that in consideration of the receipt of their *pro rata* parts of the proceeds of the sale of the land they would execute a release in full to E. M. Ross and the Southern Pole & Piling Company. But there was no new consideration passing at the time of the assignment. No new liability or responsibility, on the faith of the alleged assignment, was incurred by the creditors. It was not shown that the creditors would have refused to accept the assignment if they had known of the mortgage.

The rule of innocent purchasers for value does not apply where property is assigned simply in payment of

pre-existing debts, for in such case it can not be said that the creditors gave any new or additional consideration therefor.

In *Clark* v. *Flint*, 22 Pick. 231 (Mass.), it is held: "That assignees in trust for creditors, are not *bona fide* purchasers for value, who will be protected against an equity of which they had no notice, though the assignment contains a release of claims of creditors, where the assignees have incurred no new liability on the credit of the property." *Clark* v. *Flint*, 33 Am. Dec. 733, note. Such is the case here, conceding that this was an executed assignment. But the contract under which the purported deed of assignment was made shows that there was, in fact, no completed assignment for the benefit of the creditors of the Southern Pole & Piling Company. It is clear from the provisions of this contract that the deed was not to take effect as an assignment until the assignee had procured from "each and every creditor" an agreement to accept said lands in full and complete settlement of all sums due to said creditors. The uncontroverted evidence shows that there were three of the creditors, with claims amounting in the aggregate to $294.81, who had not signed the release of their claims. Furthermore, there was a provision in the contract to the effect "that all lawsuits now pending in the court of R. C. Hays, justice of the peace for Lake Township, in favor of the creditors for said Southern Pole & Piling Company and E. M. Ross, should be continued from time to time, until it can be ascertained whether the said settlement can be perfected, and all further proceedings held in abeyance until said time." These provisions of the contract, in pursuance of which the deed was executed, show that there was to be no completed assignment of the property until all the creditors had released their claims in full, and the assignee, in endeavoring to have this done, was representing primarily the debtor instead of the creditors. It was in evidence that Ross had four hundred (400) acres of land in Missouri. Yet the alleged assignment

was to effect a complete settlement, if possible, out of the proceeds of the sale of the land in controversy before the deed of assignment could take effect. We are of the opinion that the evidence shows that there was no assignment, such as to entitle the creditors of the Southern Pole & Piling Company to claim as innocent purchasers. They had not, in fact, acquired any rights under the purported deed, as against one holding prior equity in the land in controversy.

2. The contention of the appellants that the claim of appellees should be reduced by $272.50, the amount of the mortgage held by E. H. Grady, one of the appellees, against Ross, can not be sustained, for the reason that this alleged agreement between Ross and Grady was a transaction concerning the mortgage of real estate and was void, because it was not in writing. When the debt of Ross to Grady was paid, the mortgage had performed its function and could not thereafter be held as security for another debt. Any promise upon the part of Ross to this effect was wholly without consideration and performance of which could not be demanded by Grady. A contract of this kind to be binding would have to be in writing and based upon consideration. There was no element of estoppel in the transaction.

It follows that the decree of the court was correct, and the same is in all things affirmed.