(January 2, 1925.)

## FIRST NATIONAL BANK OF POCATELLO, IDAHO, a Banking Corporation, Respondent, v. COMMERCIAL UNION ASSURANCE CO., LTD., OF LONDON, ENGLAND, a Corporation; THE NORTH AMERICAN MORTGAGE BANK, a Corporation, Defendants; INTERMOUNTAIN ASSOCIATION OF CREDIT MEN, a Corporation; CORA F. SNYDER, Administratrix of the Estate of W. C. SNYDER, Deceased; and CORA F. SNYDER, Appellants.

[232 Pac. 899.]

Mortgage Covenant to Insure — Proceeds of Insurance Policy Taken Out by Mortgagor in Own Name—Mortgagee's Right to Proceeds—Equitable Lien—Presumptions in Favor of Mortgagee—Assignee for Benefit of Creditors not an Innocent Holder—Mortgagee's Right to Pursue Proceeds Without Foreclosure—Partial Assignment of Chose in Action—Equity—Presentment of Claim for Proceeds to Administratrix—Notary's Certificate of Acknowledgment—Evidence Required to Overcome.

1. Where a mortgage covenant expressly provided that the mortgagors should "keep the property fully insured for the benefit of the mortgagee, as its interest shall appear," and the mortgagors had at such time already procured certain insurance thereon in the name of one of them in a less sum than the mortgagee's interest, the mortgagee, after loss of the property, had an equitable lien upon the proceeds of such policy as against the mortgagors and their assignee for the benefit of creditors after the fire, the assignee not being an innocent holder for value, and the law presuming that such policy was intended for the mortgagee's benefit.

2. Where in such case the mortgagee joined the insurance company, the mortgagors and the assignee in an action to establish such equitable lien, such action was not in conflict with C. S., sec. 6949, providing but one action for the recovery of a mortgage debt; it was unnecessary for the mortgagee to present his claim to the administratrix before suit.

Publisher's Note.

1. Application of proceeds of insurance policy to mortgage debt, see notes in 118 Am. St. 968; 9 Ann. Cas. 66.

3. Where in such case the policy provided for insurance upon the mortgaged building and the stock of goods therein situate, equity will recognize a partial assignment of such insurance and enforce the same in favor of the mortgagee.

4. Where a married woman admits the signing of a real estate mortgage but denies an acknowledgment thereof, such instrument will not be set aside upon her own uncorroborated testimony, and the evidence as a whole must be clear and convincing to avoid the acknowledgment.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. O. R. Baum, Judge.

Action to enforce equitable lien on proceeds of fire insurance policy. Judgment for plaintiff. *Affirmed.*

B. W. Davis, for Appellants.

A covenant to insure is not a cove ,t running with the land and not notice to subsequent purchasers or assignees. (1 Jones on Mortgages, sec. 400, p. 551, and cases cited; *Dunlop v. Avery*, 89 N. Y. 592; *Cummings v. Cheshire Mutual Fire Ins. Co.*, 55 N. H. 457; *Chipman v. Carroll*, 53 Kan. 163, 35 Pac. 1109, 25 L. R. A. 305, and notes; *Farmers' Loan & Trust Co. v. Penn Plate Glass Co.*, 186 U. S. 434, 22 Sup. Ct. 842, 46 L. ed. 1234.)

The complaint did not state a cause of action, the contract set up in the complaint not being sufficient to permit the mortgagee to claim an equitable lien upon the proceeds of the policy, the covenant set up in the mortgage not showing what particular building should be insured nor the amount of insurance nor that any particular policy should be for the benefit of the mortgagee. (*Stearns v. Quincy Mut. Life Ins. Co.*, 124 Mass. 61, 26 Am. Rep. 647; *Cornell v. Savage*, 49 App. Div. 429, 63 N. Y. Supp. 540; *Franklin v. Browning*, 117 Fed. 226, 54 C. C. A. 258.)

An equitable lien can only be established where the intention is clear to charge some particular fund; equity only en-

4. Evidence requisite to impeachment of acknowledgment, see notes in 7 Ann. Cas. 249; Ann. Cas. 1917A, 368.

forces the lien after the intention is clearly established. (*Western States Finance Co. v. Ruff*, 108 Or. 442, 215 Pac. 501, 216 Pac. 1020; *Carmichael v. Arms*, 51 Ind. App. 689, 100 N. E. 302; *Griel Bros. v. City of Montgomery*, 182 Ala. 291, Ann. Cas. 1915D, 738, 62 So. 692; *Pettibone v. Thomson*, 72 Misc. Rep. 486, 130 N. Y. Supp. 284; 3 Pomeroy's Eq. Jur., 2d ed., secs. 1234, 1235; *McClintock v. Laing*, 22 Mich. 212; *People's Elec. Ry. Co. v. McKeen Motor Co.*, 214 Fed. 73, 130 C. C. A. 513; *Capen v. Garrison*, 193 Mo. 335, 92 S. W. 368, 5 L. R. A., N. S., 838; *Patterson v. Citizens Bank of Lubbock* (Tex. Civ.), 236 S. W. 130; *Lindberg v. Humphrey*, 289 Fed. 901; *Milam v. Milam*, 138 Tenn. 686, 200 S. W. 826; *Hibernia Banking Assn. v. Davis*, 295 Ill. 537, 129 N. E. 540; *Gove v. Morton Trust Co.*, 96 App. Div. 177, 89 N. Y. Supp. 247; *Westinghouse Elec. & Mfg. Co. v. Brooklyn Rapid Transit Co.*, 263 Fed. 532; *McCaslin v. Advance Mfg. Co.*, 155 Ind. 298, 58 N. E. 67.)

The question is one of intention and depends upon the particular facts in each case. (1 Jones on Mortgages, sec. 400, and cases cited; *Wheeler v. Insurance Co.*, 101 U. S. 439, 25 L. ed. 1055.)

There can be but one action for the recovery of a debt secured by any mortgage. (C. S., sec. 6949; *Dighton v. First Exchange Nat. Bank*, 33 Ida. 273, 192 Pac. 832.)

The community real estate cannot be encumbered unless the instrument encumbering the same is signed and acknowledged by the wife. (C. S., sec. 4666; *Myers v. Eby*, 33 Ida. 266, 12 A. L. R. 535, 193 Pac. 77; *Knudsen v. Lythman*, 33 Ida. 794, 200 Pac. 130; *McCaskill v. McKinnon*, 121 N. C. 214, 28 S. E. 343.)

A void contract cannot give rise to a valid lien. (*Barker Piano Co. v. Commercial Security Co.*, 93 Conn. 129, 105 Atl. 328.)

Where the defendant denies the allegations of the complaint and offers proof of the intention and plaintiff fails to offer proof to the contrary no lien can be established. (*Starks Co. v. Bigler*, 175 Mich. 468, 141 N. W. 570.)

Budge & Merrill, for Respondent.

Where the mortgagors have agreed in the mortgage to keep the buildings on the premises fully insured against loss by fire, with loss, if any, payable to the mortgagee, as his interest may appear, equity will presume that any insurance procured by the mortgagor was for the benefit of the mortgagee and the mortgagee will have an equitable lien on the proceeds arising therefrom, although the policy may run to the mortgagor alone. (*Miller v. Aldrich,* 31 Mich. 408; Jones on Mortgages, 3d ed., 402, 403; *Hyde v. Hartford Fire Ins. Co.,* 70 Neb. 503, 113 Am. St. 796, 97 N. W. 629; *Wheeler v. Factors & Traders Ins. Co.,* 101 U. S. 439, 25 L. ed. 1055; *Chipman v. Carroll,* 53 Kan. 163, 35 Pac. 1109, 25 L. R. A. 305; *Branch v. Milford Savings Bank,* 5 Kan. App. 246, 47 Pac. 555; *Giddings v. Seevers,* 24 Md. 363; *Wilson v. Hakes,* 36 Ill. App. 539; *Ames v. Richardson* (*Western Mfrs. M. Ins. Co.,* 29 Minn. 330, 13 N. W. 137.)

An assignee for benefit of creditors cannot be an innocent purchaser. (*Ross v. Hodges,* 108 Ark. 270, 157 S. W. 391; *Muller v. Kling,* 209 N. Y. 239, 103 N. E. 138; *Smith v. Equitable Trust Co.,* 215 Pa. 418, 64 Atl. 594; *Beard v. Heardon,* 84 Okl. 142, 203 Pac. 226.)

An equitable claim or a demand for equitable relief does not constitute a claim which must be presented to the administrator before bringing suit. (*Toulouse v. Burkett,* 2 Ida. 170, 10 Pac. 26.)

Where a certificate of acknowledgment is valid on its face and is attacked on the ground that it is false, the validity of the certificate will be sustained unless the proof of the falsity is clear and convincing and established beyond a reasonable doubt. (*Gray v. Law,* 6 Ida. 559, 96 Am. St. 280, 57 Pac. 435; *Northwestern & Pacific Hypotheek Bank v. Rauch,* 5 Ida. 752, 51 Pac. 764; *Lickmon v. Harding,* 65 Ill. 505; *Russell v. Baptist Theological Union,* 73 Ill. 337; *First National Bank of Hailey v. Glenn,* 10 Ida. 224, 109 Am. St. 204, 77 Pac. 623.)

T. BAILEY LEE, District Judge.—On March 30, 1921, Cora F. Snyder and her then husband, W. C. Snyder, executed and delivered to the First National Bank of Pocatello their mortgage on certain real property situate in Power county. Incorporated in such mortgage was the express provision, ''And said parties of the first part hereby agree to keep the buildings on said premises fully insured against loss by fire in some reliable insurance company, with loss, if any, payable to the party of the second part as mortgagee, as its interest may appear.''

At the time of the execution and delivery of such mortgage, the mortgagor, W. C. Snyder, held a policy issued him on Nov. 20, 1920, by the defendant, Commercial Union Assurance Company, in the sum of $1,250, of which $500 was for insurance on a store building on said premises, and the remainder covered the stock of goods. Thereafter the store building and contents were destroyed by fire. Immediately after the fire defendant and appellant, Intermountain Association of Credit Men, secured from mortgagor, W. C. Snyder, an assignment of the aforesaid policy for the benefit of the latter's creditors. Snyder later died and his wife, the defendant and appellant, Cora F. Snyder, was appointed his administratrix.

Before payment of the insurance money, respondent instituted this action claiming an equitable lien upon the money to the extent of $500, the amount on the store building, and praying that all the defendants save the insurance company be adjudged to have no right or interest in or to the fund involved, and that the insurance company be directed to pay the same to respondent to be applied upon the mortgage debt. The insurance company acknowledged its liability and paid the $500 into court. Defendant North American Mortgage Bank defaulted. The other defendants demurred generally, and after the demurrers had been overruled answered denying the material allegations of the complaint, and setting up special defenses substantially as follows: That the policy sued on and denominated in the sum of $500 had been actually issued in the sum of $1,250;

that in addition to the real estate mortgage plaintiff had security by way of a certain chattel mortgage, all of which security plaintiff should exhaust before resorting to the insurance money; that it was never the intention of the mortgagors that the policy in question should inure to the benefit of plaintiff mortgagee, but that it was taken out for the benefit of other creditors; that the Zion Co-operative Mercantile Institution, a prominent creditor, had advanced them credit upon the strength of such policy; that a part of such policy could not be assigned equitably or otherwise without the insurer's consent; that no claim for the proceeds had ever been presented to the administratrix; and, finallly, that the defendant, Cora F. Snyder, had never acknowledged the execution of the mortgage in question.

The defendants' motion for a jury trial having been denied, the case was tried by the court, and findings, conclusions and decree entered in plaintiff's favor. Defendants appealed, assigning sixteen specifications of error, one of which charged the court with error in refusing defendants a jury trial. This was purely a matter within the court's discretion, and it does not appear that such discretion was abused. Appellants first seriously contend that the court erred in overruling their demurrers, urging among other grounds that under C. S., sec. 6949, there can be but one action for the recovery of a debt secured by mortgage, and citing in support thereof *Dighton v. First Exchange Bank,* 33 Ida. 273, 192 Pac. 832.

This, however, is not an action to recover a debt secured by mortgage. Its purpose is to recover a security in danger of dissipation and place the plaintiff mortgagee as nearly as possible *in statu quo.* Suppose that the venal mortgagor of a sumptuous mansion, having clandestinely dismantled the same of its plate glass, carved mantels and polished doors, were to remove them to a distance or sell them, could any construction of sec. 6949 preclude the mortgagee from instituting an action for their recovery or their money value in case delivery could not be had? Replevin in such cases has

40 Idaho—16

been declared the remedy time and again.  (*Ely v. Williams,* 6 Cal. App. 455, 92 Pac. 393.)

The money so recovered, while in effect a payment on the debt, is not strictly a payment but an indemnity for the loss of the security.  So, in this case, the insurance money operates as an indemnity for the burned building.  What the mortgagee formerly had as special security is gone; the insurance money makes it whole or partially so.  When a mortgagor agrees to insure buildings for his mortgagee's benefit, he says in effect: "There's your security.  Here's some money.  If your security goes up in smoke, take the money, and you don't have to foreclose upon the basement and the woodshed before you take it either."

Closely analogous to the case at bar is the instance where a mortgagee having received additional or collateral security executed by a third party proceeds to foreclose it without first exhausting the primary security furnished by his principal debtor.  His right to do so has been repeatedly held not to be in contravention of the mother statute in California whence came our own sec. 6949.  The declared purpose of the statute is to protect the original debtor against a multiplicity of suits, and does not extend to actions upon the obligations of third parties held by the mortgagee as collateral.  (*Murphy v. Hellman Com. Trust & Sav. Bank,* 43 Cal. App. 579, 185 Pac. 485; *Martin v. Becker,* 169 Cal. 301, Ann. Cas. 1916D, 171, 146 Pac. 665; *Schehr v. Berkey,* 166 Cal. 157, 135 Pac. 41; *McArthur v. Magee,* 114 Cal. 126, 45 Pac. 1068.)  In the present case the plaintiff sues to recover upon the obligation of the insurance company under an alleged equitable assignment, not upon any original contract of the mortgagors.

The "one" action contemplated by the statute is an action the object of which is to secure a personal judgment on the original contract of indebtedness against the mortgagor and his privy, and necessarily to subject the defendant's property to execution.  It must deprive him of property that he actually owns.  In this case, no such judgment is sought; the sole purpose being to determine the right of adverse

claimants to a specific fund. If equity has assigned this fund to the mortgagee, he merely recovers a *res* already his, and the judgment cannot deprive the defendants of anything.

If this were to be held to be an action to recover a debt originally secured by mortgage, it is difficult to see where the doctrine would lead to. Suppose the insured house were to burn up before the mortgage debt became due—the mortgagee could not foreclose, and he would have absolutely no legal remedy that he could exercise to prevent the mortgagor from collecting and spending the insurance money or assigning it to a third party. Equity could not assist him, for he could not show that the mortgagor purposed doing anything to his prejudice. The mortgagee would have to stand by and wait for the day of maturity, hoping for the best. This might be especially injurious where the value of the land is negligible in comparison with the value of the superincumbent buildings.

What in fact would be the situation, in such case, of a mortgagee to whom the policy had been properly assigned and to whom the insurance company refused payment? Could it be said that the mortgagee would have to wait until maturity before he could sue upon the breached contract of insurance? Of course not. We can see no difference between the application upon the mortgage debt of insurance money collected after due assignment of the policy by an honest mortgagor and its collection by assignment effected by equity against a dishonest one.

Appellants next argue that no right to an equitable lien is set out in the complaint, it not being plead that the parties intended to create a lien upon specific property. In other words, to support the lien, there must have been designated a particular policy or amount coupled with an intention of the parties to apply the same to mortgagee's benefit. While some cases do hold that there must be a specific policy or fund, the better rule would seem to be otherwise when the mortgage covenant provides that the property shall be

"kept insured for the benefit of the mortgagee as its interest may appear."

Here, the mortgagee's interest appears upon the face of the mortgage, and the mortgagors agree to protect that interest by full insurance. The parties could have had but one understanding at the time of the covenant, namely, that the contemplated insurance, whenever or wherever obtained, should equal the mortgagee's interest or as nearly so as the insurable nature of the property would permit. All of the obtainable insurance required to carry out the mortgagor's covenant was therefore declared to be the fund. There could be no room for uncertainty without distorting the clear language of the covenant itself.

Now, where the mortgage provides that the mortgagor shall insure for the mortgagee's benefit, is it a prerequisite to the imposition of an equitable lien that the mortgagor should have taken out the particular or any policy with intent to fulfill his mortgage covenant? On this proposition there are two irreconcilable lines of authority. Of those declaring such intention to be indispensable, the leading case is that of *Stearns v. Quincy Mutual Fire Ins. Co.*, 124 Mass. 61, 26 Am. Rep. 647, cited with approval in 1 Jones on Mortgages, 6th ed., par. 400.

The other cases hold in effect that where the mortgagor covenants to insure, and already has, or thereafter takes out, insurance on the mortgaged property in his own name, such policies, in the absence of an assignment to the mortgagee, are presumed to have been for the mortgagee's benefit, and he will have an equitable lien upon the proceeds save as against an innocent purchaser or assignee for value. This presumption seems to be conclusive. Justice Cooley laid down the following rule in *Miller v. Aldrich*, 31 Mich. 408:

"The stipulation for insurance for the mortgagee's benefit, being intended to afford security supplementary to and connected with the mortgage, and to keep the mortgaged property itself so far intact as a means of security as to perpetuate the safety of the mortgagee's interest in case the

buildings should burn, was in equity a sort of adjunct to the mortgage, and was binding on the mortgagor and all others in his shoes with notice.''

The supreme court of Minnesota holding much in like manner announced in *Ames v. Richardson*, 29 Minn. 330, 13 N. W. 137:

''And when the agreement is that the mortgagor shall procure insurance upon the mortgaged property, payable in case of loss to the mortgagee, and the mortgagor, or some one for him, procures insurance in the mortgagor's or a third person's name, without making it payable to the mortgagee, though this be done without the mortgagee's knowledge, or without any intent to perform the agreement, equity will treat the insurance as effected under the agreement, (unless this has been fulfilled in some other way,) and will give the mortgagee his equitable lien accordingly.   This is upon the principle by which equity treats that as done which ought to have been done.   That is to say, inasmuch as the insurance effected ought to have been made payable to the mortgagee, equity will give the mortgagee the same benefit from it as if it had been.''

The foregoing opinions are approved in *Nordyke & Marmon Co. v. Gery*, 112 Ind. 535, 2 Am. St. 219, 13 N. E. 683, where the mortgage covenant was identical with the one here, and where the mortgagor having assigned certain policies to the mortgagee failed to assign others taken out in his own name.   There, the court regarded the proposition as ''settled'' that the mortgagee's right to the lien depends upon the executory agreement set out in the mortgage and not upon the intention of the mortgagor when he takes out the policy.   In rendering this opinion, Justice Mitchell said:

''The right of a mortgagee to avail himself of the benefit of insurance taken out by the mortgagor depends wholly upon contract, and his right to invoke the aid of a court of equity to enforce a lien upon money arising from unassigned policies effected by and in the name of the mortgagor depends entirely upon the existence of an unperformed executory agreement on the part of the mortgagor.''

To the same effect is *Re Sands Ale Brewery Co.*, 3 Biss. 175, 21 Fed. Cas. 351, the court saying: "My conclusion then is, that the covenant of the bankrupt to insure operated to assign in equity to the petitioner the benefit of any insurance effected by the bankrupt on the mortgaged property. . . . . Equity made the assignment the moment the insurance was effected, if the mortgagor did not do it."

An especially illuminating discussion of this principle was had by the supreme court of South Carolina in *Swearingen v. Hartford Fire Ins. Co.*, 56 S. C. 355, 34 S. E. 449. There as in this case the point was squarely raised by general demurrer, the defendants claiming that "it is not alleged that the policy of insurance was taken out by the mortgagor with intent to perform the alleged agreement to insure for the benefit of the mortgagee." The court dismissed the contention with the following comment: "The law will presume that insurance taken out by the mortgagor in her own name, after an agreement to insure for the mortgagee's benefit, was taken out in pursuance of the agreement, on the ground that equity regards that as done which ought to have been done."

The court then referring to the case of *Stearns v. Insurance Co., supra,* said:

"While, in Massachusetts the principle was announced that no equitable lien would exist in favor of the mortgagee unless the insurance was obtained with intent to perform an agreement to insure, yet we think the better view is that such equitable lien exists when there is an agreement to insure for the mortgagee's benefit, and subsequent insurance in the mortgagor's name, without necessity to establish as a fact that insurance was taken with intent to perform the agreement. The law will presume the actual intent to be in accord with the duty. (*Cromwell v. Insurance Co.*, 44 N. Y. 48; *Ames v. Richardson & Nordyke etc. Co. v. Gery, supra.*)"

It was further held in accordance with the rule announced by Justice Cooley in *Miller v. Aldrich* that such lien could not prevail against an assignee for value without notice. We desire to quote from that part of the opinion, inasmuch as

it was held in *Ames v. Richardson* that the mortgagee's lien would prevail even against an assignee for value without notice, on the theory that the mortgagee's assignment "was an assignment of a debt, a mere chose in action which the plaintiff took subject to all defenses and equities against him." Said the South Carolina court:

"If all the parties were before the court, and the fund in court, equity would decree the fund to the holder of the legal title, the equities being equal. This view is not inconsistent with sec. 133 of the code regulating assignment of choses in action; and providing that the action of the assignee shall be without prejudice to any setoff or other defense existing at the time of or before notice of the assignment. The question here is not one appertaining to an action by an assignee of a chose in action, but is one to enforce an alleged equity against property in the hands of another holding the legal title, and without notice of the alleged equity. The equitable lien of a mortgage on the proceeds of an insurance policy to the mortgagor, under an' agreement to insure for the mortgagee's benefit extends only to those having notice of such a lien."

As late as 1919 the supreme court of Oklahoma announced in *Smith & Furbush Machinery Co. v. Huycke,* 72 Okl. 30, 177 Pac. 919:

"It is a well-established rule that when, by the terms of a mortgage, it is the duty of the mortgagor to keep the property insured for the benefit of the mortgagee, and the mortgagor takes out a policy in his own name and does not assign it or make it payable to the mortgagee, and a loss occurs, such agreement creates an equitable lien in favor of the mortgagee to the extent of the mortgage indebtedness upon the money due under the policy of insurance." (Citing numerous cases.)

The rule stated by the foregoing authorities that the mortgagee's lien depends wholly upon the contract to insure, and not upon the mortgagor's immediate intent when he takes out the policy, rests upon common sense and equity. Any other rule would practically deprive the mortgagee of

all recourse, and throw the doors open to wholesale fraud. As a matter of fact, any mortgagor having covenanted to insure for his mortgagee's benefit could take out a policy in his own name, really intending to assign it later to the mortgagee, but upon loss of the property could immediately change his mind, assign it to some third party without notice, and swear that such was his original intention. Conscience would demand that so long as the policy is not in the hands of an innocent holder for value, the presumption should be conclusive against the mortgagor and all others in his shoes. He should not be permitted to flaunt his breach to his own emolument.

But appellants insist that this rule should not be applied to policies taken out in the mortgagor's name before the execution of the contract to insure. This contention is denied in *Ames v. Richardson, supra,* in the following language:

"We, however, can see no reason why the same rule should not be applicable to insurance already subsisting when the agreement to insure is made, as to that subsequently obtained, unless this result is affirmatively excluded by the facts in the case. Such subsisting insurance can be made payable to the mortgagee, or assigned to him, so as to satisfy the agreement. Where the agreement is, as in the case at bar, 'to keep' the premises insured, it is entirely consistent with its letter as well as its spirit to hold that it embraces prior as well as subsequent insurance."

It will be observed that in the instant case the outstanding policy, at the time the mortgage covenant was executed, was still in the mortgagor's possession and in his own name, and was therefore subject to the agreement "to keep" the property insured; the lien attached *instanter.*

Finally, it is contended that since the policy was an indivisible contract it could not be partially assigned, equitably or otherwise. This is the undoubted rule in suits at law, but this is an action in equity where it is sought to determine the rights of divers parties to the benefits of the contract. Partial assignments are always recognizable in

equity, and will be enforced when there will be no serious resultant injury to the debtor. (4 Cyc. 28.) Conclusive on this question seems to be *McDaniel v. Maxwell,* 21 Or. 202, 28 Am. St. 740, 27 Pac. 952, declaring:

"If parts of a single demand can be assigned to different persons, the rights of all the assignees can be settled in one suit. In a suit by one assignee, not only the debtor and assignor but all other assignees or claimants to any part of the fund can be made parties to the suit, so that one decree may determine the duty of the debtor to each claimant, and his rights and interests be fully protected; and hence the reason for the rule at law does not exist in equity."

The same rule is found in *Bank of Harlem v. City of Bayonne,* 48 N. J. Eq. 246, 21 Atl. 478.

The appellant, Intermountain Association of Credit Men, cannot claim immunity as an innocent purchaser or assignee. It is admittedly an assignee for the benefit of creditors, having parted with no value. An assignee for the benefit of creditors gets no better rights than the assignor had at the time of the assignment. (*Aetna Ins. Co. v. Thompson,* 68 N. H. 20, 73 Am. St. 552, 40 Atl. 396; *Beard v. Herndon,* 84 Okl. 142, 203 Pac. 226; *Muller v. Kling,* 209 N. Y. 239, 103 N. E. 138; *Rose v. Hodges,* 108 Ark. 270, 157 S. W. 391; *Smith v. Equitable Trust Co.,* 215 Pa. 418, 64 Atl. 594.)

There is no merit in the objection that no claim for the insurance money was presented to the administratrix. This is not an action against an estate for a money judgment or otherwise, but is an action *in rem* involving *res* claimed to be no part of the said estate. (C. S., sec. 7588.)

We are of the opinion that the trial court did not err in overruling the demurrers. It is unnecessary to discuss appellant's contention that respondent should have exhausted its remaining security before resorting to the insurance money, as the matter has already been indirectly disposed of in the forepart of this opinion. There remains but one specification of error not covered by the general discussion of the demurrers. Appellant Cora F. Snyder complains that the court erred in finding that she and her husband ac-

knowledged their execution of the mortgage. At the trial Mrs. Snyder testified that she and her husband signed the mortgage in the bank after office hours; that she did not acknowledge her signature, and did not see Mr. Bistline, the notary whose certificate appears upon the instrument. On direct examination the notary testified as follows:

"Q. Have you any distinct recollection of Mr. and Mrs. Snyder coming into the bank?

"A. I don't recall that.

"Q. You took the acknowledgments on the instruments there at the bank?

"A. I did.

"Q. It is customary, is it not, to take the acknowledgments in the presence of the individual signers?

"A. That is the custom."

On cross-examination he testified further:

"Q. You don't remember seeing Mrs. Snyder in there that evening?

"A. As I say, the instrument would so indicate, so far as I can remember. I don't remember each individual acknowledgment that I take.

"Q. Isn't it true that sometimes when customers come in like that Mr. Byers or Mr. Valentine will take their signatures on the instrument, and hand it to you to acknowledge?

"A. I think it is done occasionally, not often."

This court has heretofore held that a notary's certificate will not be vacated upon the unsupported testimony of the party bound, where such party in fact signed the instrument attacked. (*Gray v. Law,* 6 Ida. 559, 96 Am. St. 280, 57 Pac. 435; *Bruce v. Frame,* 39 Ida. 29, 225 Pac. 1024; *Sneddon v. Birch,* 39 Ida. 720, 230 Pac. 29.)

The fact that the notary had occasionally taken acknowledgments without the presence of the signers is no direct evidence that he did so in this particular case. The supporting evidence must be clear and convincing as well as that of the party seeking to avoid. To hold that such evidence as is here given satisfies the required corroboration would be

to substitute a mere guess on the part of the trial court. The finding will not be disturbed. We find no error, and the judgment and decree will be affirmed.

McCarthy, C. J., and Wm. E. Lee, J., concur.

Budge, J., being disqualified, did not sit at the hearing nor participate in the decision.

William A. Lee, J., did not sit at the hearing nor participate in the decision.