(No. 6917.   December 30, 1941)

CARL E. BRANDT, Appellant, v. PETER BONIN, JOHN BONIN, DOMINIC BONIN, and AETNA INSURANCE COMPANY, a corporation, Respondents.

(120 Pac. (2d) 1009)

Rehearing denied January 31, 1942

Bissell & Bird, for Appellant.

Chapman & Chapman and James T. Murphy, for Respondents.

AILSHIE, J.—April 1, 1937, Carl Brandt and wife entered into an agreement with Pete Bonin, for the construction and lease of a hotel in Ketchum, Idaho. By the terms of the contract, the Brandts agreed to furnish all of the lumber and materials then in the old Guyer Hotel on Warm Springs Creek in Blaine county, of a total value of $5,000; Bonin to furnish $5,000 in labor and materials in constructing a new hotel building. After the sum of $5,000 was exhausted, as above set out, each of the parties was to pay one-half of the cost of labor and materials necessary to complete and equip the building; the lessee (Bonin) to pay all taxes levied, and to keep the building and furnishings insured in an amount agreeable to the lessors (Brandts); the lease was to continue for a period of five years, with the privilege of renewal for a like period. In the event the lessors decided to sell the lot and water right, together with their interest in the building and equipment, at any time after two years from the date of the agreement, the lessee was to have first option to buy. In the event lessee desired to quit and abandon the property or the lease, the lessors were to have the prior right of buying all of lessee's interest in the property. Appellant Brandt was the owner of the lots and also the owner of the Bald Mountain Resort in Ketchum, the Guyer Hot Springs and Guyer Hot Springs Hotel located some distance from Ketchum.

To secure additional money for completion of the enterprise, on April 28, 1937, a chattel mortgage for $15,000 was executed by the Brandts to the First Security Bank of Idaho, covering furniture and equipment located "at the Bald Mountain Hot Springs cabins and pool and office and confectionary," and also "all other furniture and equipment to be installed in what is to be known as Hotel St. Georg now under construction." To further secure payment of the loan, the Brandts also executed their real estate mortgage in favor of the bank, covering the Guyer Hot Sulphur Springs property, eight lots in Ketchum,

together with all water rights, permits and rights of way to property described in the mortgage. June 30, 1937, Bonin signed a waiver and agreement to relinquish to the First Security Bank "any and all right, title, interest, lien or claim" in the hotel building then being constructed, *"to the extent of any and all claims which said First Security Bank of Idaho"* had or might acquire under their real estate mortgage.

May 1, 1938, in order to purchase Brandt's interest in the hotel property, Bonin executed his promissory note, in favor of the Brandts, for $40,000, at 4½% interest, payable in semi-annual installments. To secure payment of the same, a mortgage was executed by Bonin and delivered to appellant, covering the hotel and equipment. Under date of May 1, 1938, and contemporaneous with execution and delivery of the mortgage, the Brandts executed and delivered to Bonin a deed to these premises, reciting a cash consideration of $40,000, as having been received for the property. The deed makes no mention of any mortgage or encumbrance but contains covenant of *full warranty of title*. Bill of sale for all the furnishings and equipment was also given by Brandt to Bonin.

In the body of the mortgage was contained the following provision with reference to carrying of insurance to secure the mortgage:

"Mortgagor further agrees to keep all buildings now or hereafter located on the said premises and all equipment attached or appurtenant thereto insured against loss or damage by fire in an amount not less than $20,000.-00, and that two-thirds (⅔) of the total insurance carried by mortgagor shall be under a satisfactory mortgage clause assigned and delivered to the said mortgagee as further security to said mortgage debt, save and except in the event the remaining balance due on account of said indebtedness secured hereby is $7,500.00 or less, and then in that event said mortgage— shall have no right or interest in and to said fire insurance."

In addition to the foregoing, the mortgage set out a copy of the note to Brandt, which also contained the following provision with reference to mortgage debt owing

by Brandt to the First Security Corporation of Idaho, herein referred to as the "bank."[1]

In accordance with provision contained in the mortgage, two policies were procured by Bonin, one for $5,000 on the building, (No. 1869, Home Insurance Company)— expiring June 1, 1939; the other for $10,000 ($5,000 on building, $5,000 on furniture) in the Norwich Union Fire Insurance Society, Ltd., expiring June 12, 1939; each payable to bank as its interest as mortgagee might appear. Bonin also procured a further policy from the Aetna Insurance Co. in the sum of $7,500, running in his own favor.

November 1, 1938, respondent paid to the bank the first installment of $2505.86 which was due on his note, and caused the same to be credited on the $15,000 note due from Brandts to the bank and received credit on his $40,000 note due appellants.

January 16, 1939, the Hotel St. Georg and contents were destroyed by fire and the full amount of the two insurance policies, issued by the Home Insurance Company and the Norwich Union Fire Insurance Society,

---

[1] "This note is given for the purchase price of the following described real estate situated in Blaine County, State of Idaho, and described more particularly as follows, to-wit:

> Lots One (1) and Two (2) of Block Nineteen (19) of the Townsite of Ketchum, Idaho, as shown by the official plat thereof on file in the office of the County Recorder of Blaine County, Idaho,

and the payment hereof is secured by a mortgage of even date herewith, on the above described real estate, and further secured by a chattel mortgage of even date herewith, and the payee of this note, Carl E. Brandt, and Dorothy Brandt, his wife, *having prior to the date hereof* made, executed and delivered to the First Security Corporation of Idaho, a corporation, to secure the payment of the sum of Fifteen Thousand and no/100 ($15,000.00) Dollars, their real estate mortgage covering, among other properties, the above described real estate, which said real estate mortgage is recorded in Book 114 of Mortgages, at page 518, records of Blaine County, Idaho, and to further secure the payment of said indebtedness have made, executed and delivered to said First Security Corporation of Idaho, a corporation, their chattel mortgage, covering among other things, certain goods and chattels located in and used in connection with the operation of the Hotel St. Georg, which said chattel

$15,000, was paid to the bank and credited on the $40,000 note executed by Bonin, leaving a balance unpaid of $25,000, less the first installment of $2505.86. January 24, 1939, respondent assigned and transferred to his father and uncle, John and Dominic Bonin, respectively, all sums due and to become payable under the policy of fire insurance for the sum of $7,500, issued by the Aetna Insurance Company.

March 16, 1939, this action was commenced, praying the court to declare an equitable lien upon the proceeds from the $7,500 insurance policy and that the lien of plaintiff is prior and superior to any lien, right or claim of defendants Bonin; that the insurance company pay to the plaintiff $7,500, to apply as a payment on the Bonin note. Based upon stipulation between counsel for the respective parties, judgment was entered June 13, 1939, ordering that defendant, Aetna Insurance Company, pay $7,500 to the clerk of the district court of Blaine county, who was appointed custodian of the money, to hold the same subject to further direction of the court. On delivery of

---

mortgage is recorded in Book 140 of Mortgages at page 94, records of Blaine County, Idaho, do hereby *consent that all payments due and owing under this promissory note be paid by the maker hereof direct to the First Security Corporation of Idaho*, a corporation, its successors or assigns, until the full amount of the principal and interest has been paid on said indebtedness in favor of said First Security Corporation of Idaho, a corporation, or until the said real estate mortgage and the said chattel mortgage hereinabove mentioned and referred to have been released and satisfied of record as to the above described real estate, and as to the goods and chattels located in and used in connection with the operation of the Hotel St. Georg, and that thereafter all payments due and owing under the terms and conditions hereof shall be made direct to the payee, his heirs, executors, administrators or assigns; it being expressly understood that upon the payment of an amount sufficient to pay the principal and interest of the indebtedness secured by said real estate mortgage and said chattel mortgage now held by the First Security Corporation of Idaho, a corporation, that all payments due under the terms and conditions of this promissory note shall be extended to and until such time as the said real estate mortgage and the said chattel mortgage are released and satisfied of record as to the above described real estate and as to the goods and chattels located in and used in connection with the operation of Hotel St. Georg.

the money, the insurance company was released and discharged from any further liability on the policy.

Trial was had January 4, 1940, before the court without a jury. Motion by plaintiff for nonsuit was in part sustained. Decree was entered dismissing plaintiff's complaint; that defendants John Bonin and Dominic Bonin recover and receive from the clerk of the court the sum of $7,500, and their costs and disbursements; that they recover nothing from the plaintiff on that portion of their cross-complaint whereby they seek judgment in the sum of $7,853.31 and interest. From the adverse part of that decree, plaintiff has appealed.

The question to be determined in this case is: Whether $7,500 of the insurance, collected on account of loss of the property by fire, should be paid to the mortgagee or to the mortgagor's assignees. There is no question about the good faith of the assignment; the assignees were not, however, innocent purchasers for value; (*First National Bank of Pocatello v. Commercial Union Assurance Co., Ltd.*, 40 Idaho 236, 232 Pac. 899; 92 A. L. R., 563, note) so that the principles involved are those that should properly be applied as between mortgagor and mortgagee. When reduced to its final analysis, the problem is about as follows:

Brandt had contributed his old Guyer hotel building, of the agreed value of $5,000; and Bonin contributed labor and services of an equal amount. When that was done, they still did not have the hotel completed. They had also agreed to bear any further necessary expenses equally. Bonin had nothing with which to finance himself except his labor and skill. Brandt had title to this property as well as other valuable property in the vicinity of Ketchum. Brandt secured a $15,000 loan from the bank, and that money was put into the hotel enterprise; its return payment was secured by mortgage, not only of the hotel and equipment, but on other property owned by the Brandts. After Bonin got the hotel fairly started, he conceived the idea he wanted to own the entire property. They finally agreed that he should take the property, lots, building and equipment, and pay Brandt $40,000 for his interest. At the time this transaction was consummated,—that is, a

deed executed in favor of Bonin and a return mortgage made by Bonin to Brandt,—Bonin had an investment in the enterprise of $5,000 labor and services. Brandt had an investment of a $5,000 hotel building and $15,000 cash, which he had procured from the bank, or a total of $20,000, plus the lots. It is agreed by all parties concerned, that no money changed hands when the deed and mortgage were executed. The $40,000 payment, which is recited in the deed as having been made, was represented by the $40,000 promissory note and mortgage which Bonin delivered to Brandt.

Three decisive facts are outstanding: (1) The purchase price for the property was $40,000; (2) Bonin signed the $40,000 note containing the "consent that all payments . . . . owing under this promissory note be paid by the maker hereof direct to the First Security Corporation of Idaho, . . . . until the full amount of the principal and interest has been paid on said indebtedness in favor of said First Security Corporation"; (3) The payments so made were to be credited on the purchase price of the property. (See *Siekman v. Moler,* 47 Idaho 446, 276 Pac. 309; *Warner v. Bockstahler,* 48 Idaho 419, 423, 282 Pac. 862; *Hinckley Estate v. Gurry,* 53 Idaho 551, 554, 26 P. 2d 121.)

It is perfectly clear that the first payments Bonin was to make on his note to Brandt were to be made to the bank in payment of the bank's note and mortgage, and when made were to be also credited on Bonin's note and mortgage to Brandt. That was clearly the understanding of the parties at the time and is evidenced by the fact, that the first and only installment payment made by Bonin on the note was $2505.86, credited on both the bank's note and Brandt's note. Brandt was obligated under his mortgage to carry insurance on the property in the sum of $15,000 to cover the bank's note. Bonin was obligated, by stipulation in his note and mortgage, to carry not less than $20,000 insurance on the property, *two-thirds of which was to be carried in favor of Brandt as mortgagee.*

The bank mortgage constituted a lien and encumbrance on the hotel property purchased by Bonin and, in order

to protect his investment, it was necessary for him to comply with the terms of that mortgage in payment of installments, taxes, and to carry the required amount of insurance payable to the mortgagee. The bank mortgage contained, among other things, the requirement that the mortgagor " . . . . keep the buildings located upon said premises insured in the sum of at least $15,000.00, with loss, if any, payable to the said mortgagee, or assigns, in some company to be approved by the mortgagee, and deliver all policies and the renewals thereof, to it, and in the event of default to so do, the holder hereof may insure the same."

The debt secured by that mortgage did not fall due until April 28, 1942. The mortgage contained the usual acceleration clause, to the effect that, upon failure of the mortgagor to comply with any of the requirements of the mortgage, the mortgagee might declare the whole sum due. It was therefore a matter of special importance to Bonin, as well as Brandt, to see to it that the terms of the bank mortgage (including insurance clause) were complied with in order to prevent default and foreclosure.

█ Agreement to make the deduction of the amount of the bank note from the total purchase price amounted to an "equitable assumption" of the bank note. *Warner v. Bockstahler*, 48 Idaho 419, 282 Pac. 862; *Meyers v. Siracusa*, 125 N. J. Eq. 183, 4 Atl. 2d 519.

█ It is argued that the provision contained in the note, that the Brandts "do hereby consent that all payments due and owing under this promissory note be paid by the maker hereof direct to the First Security Corporation of Idaho, . . . . *until such time as the said real estate mortgage* and said chattel mortgage *are released* and satisfied of record as to the above described real estate," (italics supplied) amounted in both law and fact to an agreement, between the payee of the note and the obligor thereto, that the *mortgagor should pay the bank note and deduct the amount thereof from the total debt of the mortgagor to the mortgagee.* The term "consent" amounted to an authorization and direction on the part of Brandt to Bonin to make payment of so much of his debt in that way; and the fact that the note and mortgage,

containing that stipulation, were *signed by Bonin himself,* amounted to an acceptance of the terms of the consent and an agreement to pay so much of his debt to Brandt in that way.

" 'Consent, in law, means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice to do something proposed by another.' " *People v. Conklin,* (D. C. App. Cal.) 10 Pac. 2d 98, 101.

"The word 'consent' is defined to be the 'voluntary allowance or acceptance of what is done or proposed to be done by another. In law—intelligent concurrence in a contract or an agreement of such a nature as to bind the party consenting; agreement upon the same thing in the same sense.' "

*Clark v. North,* 131 Wis. 599, 111 N. W. 681, 11 L. R. A., N. S. 764, 770, 11 Ann. Cas. 1080; *Huntley v. Holt,* 58 Conn. 445, 20 Atl. 469, 9 L. R. A. 111; *Dean v. Dean,* 136 Ore. 694, 300 Pac. 1027, 1029, 86 A. L. R. 79; *Bergman v. Rhodes,* 334 Ill. 137, 165 N. E. 598, 65 A. L. R. 344, 349; 31 Am. Jur. 106; Webster's International Unabridged Dictionary (1941).

In any view that may be taken of the provision in the mortgage, with reference to carrying of insurance, it is undisputed that Bonin *failed in at least one particular to comply with his contract.* He had agreed with Brandt to carry not less than $20,000 insurance on this property; that two-thirds of the insurance carried (up to $20,000) should be assigned to Brandt as additional security for his interest as mortgagee of the property. As a fact, none of the insurance was assigned to Brandt in accordance with the agreement to do so. There is no reasonable way of escape from the conclusion, that Bonin assumed the bank note and mortgage as a part of both his express as well as implied obligation, under the facts and circumstances surrounding the transaction. *Warner v. Bockstahler,* 48 Idaho 419, 282 Pac. 862; *First National Bank of Pocatello v. Commercial Union Assurance Co., Ltd.,* 40 Idaho 236, 232 Pac. 899; *Meyers v. Siracusa,* 125 N. J. Eq. 183, 4 Atl. 2d 519.

A somewhat unique stipulation was offered and ad-

mitted in evidence in this case without objection, a copy of which is set out in the footnote hereto.[2] It will be observed from this stipulation, that the debt from Bonin to Brandt has, by mutual consent and decree, been liquidated and reduced to the sum of $7,500 balance due. Notwithstanding the stipulation to that effect, it is further provided that "until such action aforesaid [the present case], concerning such insurance policies, is finally settled and determined, there is stipulated to be owing and unpaid . . . . a sum in excess of $7500." In other words, this latter provision is made simply for the purpose of the trial of the present case and says it is intended to have no effect on the equities existing between the parties in this case.

Now, turning to the mortgage from Bonin to Brandt, we find that when the "indebtedness secured hereby is *$7,500 or less,* said mortgagee shall have no right or interest in and to said fire insurance." (Italics supplied.)

Evidence in the record convinces the writer that these litigants *both acted in good faith in all their transactions with each other.* Brandt thought he was to have two-thirds of $20,000 insurance. Bonin thought that

[2] "It is hereby stipulated and agreed that judgment may be rendered in favor of the plaintiff and against the defendant for the foreclosure of the mortgages attached to the complaint on file herein, and for the amount of $25,144.56.

It is further stipulated and agreed that such amount shall be paid by the defendant Peter Bonin in the following manner: he and his wife shall forthwith make, execute and deliver a good and sufficient quitclaim deed conveying to the plaintiff Lots 1 and 2, Block 19, Townsite of Ketchum, Idaho as shown by the official plat thereof on file in the office of the County Recorder of Blaine County, Idaho, together with a bill of sale for the personal property salvaged from said hotel, listed in X A hereto, and that such deed, bill of sale and immediate possession of such real and personal property shall be received and accepted by the plaintiff as a payment of $17,644.56 on account of the judgment aforesaid.

It is further stipulated and agreed that upon the final determination of that certain suit entitled *Carl E. Brandt v. Peter Bonin, John Bonin, Dominic Bonin and Aetna Insurance Company, a corporation,* the balance of said judgment shall be by the plaintiff satisfied and released in the event that the plaintiff recovers the said sum of $7,500.00 in litigation in said case. In case the said defendants and cross-complainants prevail in said last mentioned action, then the plaintiff will, upon the payment to him of the sum

Brandt was to have the benefit of two-thirds of the insurance carried, but he evidently thought that, to carry *$22,-500* insurance,—$15,000 to cover the bank debt,—was a compliance with the insurance clause. In other words, Bonin seems to have thought that carrying the $15,000 insurance in favor of the bank was a compliance with the two-thirds-of-$20,000-insurance-clause *in his mortgage to Brandt.*

Since the bank has been paid; and a deed to the real estate and the salvaged personalty has been turned over to Brandt; and this $7,500 insurance is still undistributed; it seems equitable and just to distribute that sum on the same ratio on which it was mutually understood the insurance was to be carried and apportioned; viz., two-thirds to Brandt and one-third to Bonin.

This being a suit in equity, we are impelled, under all of the facts of the case, to order a reversal and modification of the judgment.

The judgment will therefore be reversed and the cause is remanded to the trial court with direction to enter a decree in favor of appellant for two-thirds and respond-

---

of $1.00 by said Peter Bonin, satisfy and release said judgment rendered herein. It being the purpose and intent of this stipulation that the suit of *Carl E. Brandt v. Peter Bonin, John Bonin, Dominic Bonin and the Aetna Insurance Company,* shall proceed to trial and final judgment, and that the making and entering of the judgment herein, this stipulation for a judgment and the acceptance of the quitclaim deed, bill of sale and delivery of the property shall in no way prejudice or (e)ffect the rights of either or any party in such action, but that the same shall be tried out upon its merits as though no settlement had been arrived at in this action; and that until said action aforesaid, concerning such insurance policy, be finally settled and determined there is stipulated to be due, owing and unpaid from the defendant Peter Bonin to the plaintiff Carl E. Brandt, a sum in excess of $7,500.00, and that the same is secured by the mortgage described in plaintiff's complaint in such suit, and in this suit. The full object, intent and purpose of this stipulation being to effect a settlement whereby no deficiency judgment shall be claimed and enforced by the plaintiff Carl E. Brandt against the said defendant Peter Bonin on account of the $40,000.00 note mentioned, described and set out in the said complaint, and on the other hand to permit such suit concerning such insurance money to proceed to final judgment without prejudicing the rights of either party thereto, or in any way affecting such action."

ents one-third of the trust fund on deposit with the clerk. Costs awarded appellant against the Bonins.

Budge, C.J., Givens, Morgan and Holden, JJ., concur.