411 P.2d 768

Arch LUNDY and Esther Lundy, husband and wife, personally, and Esther Lundy, as Guardian ad litem for Franklin Lundy, a minor, Plaintiffs-Appellants,

v.

J. W. HAZEN, Defendant-Respondent.

No. 9660.

Supreme Court of Idaho.

Feb. 3, 1966.

Rehearing Denied March 21, 1966.

Rayborn, Rayborn & Rayborn, Twin Falls, for appellants.

Kramer, Walker, Pope & Plankey, Twin Falls, for respondent.

SMITH, Justice.

This is an appeal from a summary judgment dismissing an action brought by appellants against respondent for recovery of damages which Franklin Lundy, a minor, sustained June 27, 1963, on account of personal injuries, together with medical and hospital expenses. The boy was playing with a .22 caliber cylinder type pistol loaded with a single shell, when the pistol discharged, the bullet wounding him in the face with resultant residual scars.

Appellants, at the time of the accident, maintained their home in Kimberly, Idaho, with their two children, Franklin, 13 years old, and Julie, 15 years old. Appellant Arch Lundy was a forest service employee. The parents, on June 1st, moved to a ranger station about 31 miles distant from Kimberly. Mrs. Lundy traveled back and forth from the station to the home sometimes 3. or 4 times a week, returning to the station at night. The children worked in the beet fields. Mrs. Lundy kept in close touch with the children both personally and by telephone.

For sometime prior to the accident Franklin had in his possession a .22 rifle loaned to him by a relative. Esther Lundy, in her deposition, stated that the boy was allowed to go hunting with the rifle and was permitted to purchase ammunition for it. He had had instruction in the use of the gun. Mrs. Lundy considered him to be a careful boy.

On June 27, 1963, Franklin, accompanied by his sister, went to a sporting goods store

in Twin Falls, owned by respondent, for the purpose of buying a pistol with moneys he had earned. The sister advised her brother to consult his father before purchasing the gun. Respondent, without requesting written parental consent, sold the pistol to Franklin. His parents had not given their consent, either orally or in writing, to the purchase, although the boy's mother knew of the boy's desire to acquire the pistol.

The evening of June 27th, Julie telephoned her mother. Mrs. Lundy, in her deposition, stated that during the conversation, she first learned about her son's purchase of the pistol. Earlier that day, when she visited the children at the home, Franklin told his mother of his desire to obtain the pistol. Mrs. Lundy then stated, "I asked him not to, to talk to his dad first, and he said, well, he had the money, and I excused it at that, because I figured the man wouldn't sell it to him because he wasn't old enough." She then stated that she did not tell Julie, the daughter, to take the pistol away from Franklin, but consented to the boy keeping it "for the time being," because she "figured he would handle it with care and keep it put up." She didn't remember whether she told her husband that Franklin had the pistol; later she stated that on June 28, 1963, after the accident, she told the boy's father that the boy had purchased the gun. The father, Arch Lundy, in his deposition, stated that the pistol was bought without his consent or knowledge.

The afternoon of June 28, 1963, after purchasing ammunition, Franklin returned home; after "restacking" the ammunition in its box, he had one cartridge left over which he inserted in the pistol. Later, he was "playing" with the pistol, snapping its hammer and trigger mechanism; the cartridge discharged and the bullet caused the boy to suffer sundry wounds in his face, neck and mouth.

Esther Lundy, in answer to an interrogatory, stated that on the evening the gun was purchased, the automobile which she used in going to and from the ranger station and her home was not capable of making the trip.

The trial court, upon hearing respondent's motion for summary judgment, dismissed the action, and from the resulting judgment appellants have appealed.

The trial court, when confronted by a motion for summary judgment, must determine if there are any genuine issues of material fact which should be resolved by the trier of the facts. I.R.C.P. 56(c); Otts v. Brough, 90 Idaho 124, 409 P.2d 95 (1965). A motion for summary judgment must be denied if the evidence is such that conflicting inferences can be drawn therefrom and if reasonable men might reach different conclusions. Otts v. Brough, su-

pra. All doubts and all favorable inferences which may reasonably be drawn from the evidence will be resolved against the party moving for summary judgment. Otts v. Brough, supra.

█ Questions of negligence, proximate cause, intervening cause, and foreseeability are generally regarded as questions of fact for determination by the jury unless the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances in only one way. Walenta v. Marks Means Co., 87 Idaho 543, 394 P.2d 329 (1964); Anderson v. Blackfoot Livestock Commission Co., 85 Idaho 64, 375 P.2d 704 (1962); Hoffman v. Barker, 79 Idaho 339, 317 P.2d 335 (1957).

Appellants assign as error the granting of the summary judgment; they contend that the pleadings, depositions and affidavits show genuine issues of material fact which warranted determination by a trier of the facts.

█ Appellants contend that respondent's act of selling the pistol to Franklin Lundy, a minor under the age of 16 years, without the child having presented the written consent of his parents to the purchase of the gun, was in violation of I.C. § 18–3308, and that such act was the proximate cause of the child's injury. I.C. § 18–3308, reads in part as follows:

"No person, firm, association or corporation shall sell or give to any minor under the age of sixteen years * * * any firearms of any description, without the written consent of the parents or guardian of such minor first had and obtained. Any person, firm, association or corporation violating any of the provisions of this section shall be deemed guilty of a misdemeanor. * * *"

In Bale v. Perryman, 85 Idaho 435, 380 P. 2d 501 (1963), this Court ruled:

"* * * this Court has repeatedly held that for one to violate a positive statutory inhibition is negligence per se * * *. Brixey v. Craig, 49 Idaho 319, 288 P. 162; State ex rel. McKinney v. Richardson, 76 Idaho 9, 277 P. 2d 272; Ineas v. Union Pac. R. Co., 72 Idaho 390, 241 P.2d 1178. In 65 C.J.S. Negligence § 19c, p. 418, the general rule is stated as: The generally accepted view is that violation of a statutory duty constitutes negligence, negligence as a matter of law, or, according to the decisions on the question, negligence per se, for the reason that nonobservance of what the legislature has prescribed as a suitable precaution is failure to observe that care which an ordinarily prudent man would observe, and, when the state regards certain acts as so liable to injure others as to justify

their absolute prohibition, doing the forbidden act is a breach of duty with respect to those who may be injured thereby; or, as it has been otherwise expressed, when the standard of care is fixed by law, failure to conform to such standard is negligence. * * *" 85 Idaho at 440, 380 P.2d at 503.

I.C. § 18–3308 enunciates a positive prohibition of the act committed by respondent, i. e., the sale of a firearm to Franklin Lundy, a minor then of the age of 13 years, without the written consent of his parents. Carron v. Guido, 54 Idaho 494, 33 P.2d 345, (1934).

Respondent, while admitting that violation of I.C. § 18–3308 constitutes negligence per se, nevertheless contends that no liability attaches to the seller of the firearm unless the illegal sale is the proximate cause of the injury.

While the act complained of is negligence per se, that alone is not sufficient to render respondent liable. For one to be liable for his negligent act, it must be shown that the act was the proximate cause of the injury. Dewey v. Keller, 86 Idaho 506, 388 P.2d 988 (1964); Smith v. Sharp, 82 Idaho 420, 354 P.2d 172 (1960); Clark v. Chrishop, 72 Idaho 340, 241 P.2d 171 (1952); Carron v. Guido, supra.

In Chatterton v. Pocatello Post, 70 Idaho 480, at 484, 223 P.2d 389 at 391, 20 A.L.R. 2d 783 (1950), this court stated:

"The breach of duty to be actionable must be the proximate cause of the injury complained of, that is, the cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the result, and without which the result would not have occurred."

Respondent asserts however, that the minor's mother acquiesced in and consented to her son's possession of the pistol and thereby she assumed control over its use prior to the injury, thereby constituting an independent intervening cause sufficient of itself to be the proximate cause of the injury; that from the point of assumption of parental consent, the seller's negligence no longer was the proximate cause of the injury.

Respondent shows that appellant Esther Lundy had notice or knowledge of the fact that Franklin had purchased the pistol, and asserts that by not ordering it taken away from her son, she consented to his possession of the same; that such parental consent and failure to take steps to have the gun taken from Franklin, constituted an intervening or superseding cause of the boy's injury, which relieved respondent of liability for harm resulting from the sale of the firearm.

In Smith v. Sharp, supra, this Court, quoting from Restatement, Torts, adopted the definition of an efficient, intervening

cause or superseding cause, comment thereon, and considerations to be regarded in determining whether an intervening force is a superseding cause of the injury. We quote almost identical language from 2 Restatement, Torts 2d, as follows:

"A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.

"*Comment:*

\* \* \* \* \* \*

"b. A superseding cause relieves the actor from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm. Therefore, if in looking back from the harm and tracing the sequence of events by which it was produced, it is found that a superseding cause has operated, there is no need of determining whether the actor's antecedent conduct was or was not a substantial factor in bringing about the harm." 2 Restatement, Torts 2d, § 440.

"The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:

\* \* \* \* \* \*

"(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

"(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

"(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

"(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

"(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion." 2 Restatement, Torts 2d, § 442.

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard

it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent." 2 Restatement, Torts 2d, § 447.

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom; although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized, or should have realized, the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." 2 Restatement, Torts 2d, § 448.

In Dewey v. Keller, supra, speaking of foreseeability of an intervening cause, this Court said:

" * * * Under the principles as announced by this court, before an intervening superseding cause of an accident can become the sole proximate cause of the injury, and thus relieve the first negligent wrongdoer of liability, such subsequent cause must have been unforeseen, unanticipated and not a probable consequence of the original negligence. [Citations] The intervention of a third person's negligence or of other and new direct causes of injury does not preclude recovery against the original negligent actor if the injury was the natural or probable result of the original wrong. Carron v. Guido, 54 Idaho 494, 33 P.2d 345." 86 Idaho at 515, 388 P.2d at 993.

■ This court has not ruled on the question of parental consent as being an efficient, intervening cause such as to relieve a seller of a firearm of liability for harm resulting from allowing a child to gain possession of a gun. The few cases decided in other jurisdictions indicate that where the negligent acts of a third person have permitted a child to come into possession of dangerous explosives or firearms with resultant injury, and the parent or parents became cognizant of the situation but permitted the child to retain possession, the parents' acts have been deemed to be an intervening cause sufficient to relieve the third party of liability. Pittsburg Reduction Co. v. Horton, 87 Ark. 576, 113 S.W. 647, 18 L.R.A.,N.S., 905 (1908); Peterson v. Martin, 138 Minn. 195, 164 N.W. 813 (1917); Shaffer v. Mowery, 265 Pa. 300, 108 A. 654 (1919); 10 A.L.R.2d 22, Explosives—Injury to Child, § 44, Acts of Parents.

Although Mrs. Lundy, in her deposition, stated that she knew of the boy's desire to purchase the pistol, nevertheless she deferred to the boy's father in the matter of consent. She told the boy to talk to his father first. Julie, the sister, expressed herself to the same effect when Franklin was looking at the pistol in respondent's store, her testimony being as follows:

"A. Well, we went in the store and Skip [Franklin] was looking at this .22, and, as I said before, I told Skip to wait and talk to dad, and Skip didn't say anything, and I says, 'Well, put some money on it, you know, so you will have it,' and Mr. Hazen [respondent] said something to the effect that 'you better buy it now, this kind goes fast,' or something like that. I don't remember his exact words, and Skip said he would rather buy it now."

The conversations to which Julie referred in the foregoing testimony are shown to have taken place in the presence of respondent; nevertheless, though respondent was put on notice by the conversation, he urged and induced the boy to purchase the gun.

The affidavit of appellant Arch Lundy shows that not only was the pistol purchased without his consent or knowledge, and against his wishes, but that he did not know that his son had the gun until after the accident, and that he had not at any time consented that his son have a pistol; also, that he had lectured the boy about having such a firearm and told him that it was dangerous for children to play with pistols.

"Consent is an act of the will or feelings; it need not be written, but may be spoken, or acted, or it may be implied. It may be manifested by action, or by inaction, or by silence, from which arises an inference that consent has been given.

"At law the term involves approbation and submission, but it cannot be the subject of compulsion. It is affirmative in its nature and not a vacant or neutral attitude. Legally it means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice to do something proposed by another. It is an act unclouded by fraud, duress, or sometimes even mistake, * * * It may be by ratification as well as by previous permission." 15 C.J.S. Consent pages 979–980; Stanley v. Cox, 253 N.C. 620, 117 S.E.2d 826 (1961); City of Snyder v. Bass, 360 S.W.2d 426 (Tex.Civ.App.1962); People v. Westek, 31 Cal.2d 469, 190 P.2d 9 (1948); State v. McDaniel, 80 Ariz. 381, 298 P.2d 798 (1956); Pan American Production Co. v. Robichaux, 200 La. 666, 8 So.2d 635 (1942); Heine v. Wright, 76 Cal.App. 338, 244 P. 955 (1926).

·"The word 'consent' is defined to be the 'voluntary allowance or acceptance of what is done or·proposed to be done by another.'" Brandt v. Bonin, 63 Idaho 382, 392; 120 P.2d 1009, 1013 (1941).

:"*Implied Consent.* That which is manifested by signs, actions, or facts, or by inaction or silence, from which arises an inference that the consent has been given." 15 C.J.S. Consent page 981. In re Hudson County, 106 N.J.L. 62, 144 A. 169, 176 (1928); State v. Stanfield, 1 S.W.2d 834 (Mo.1927).

The record, as it relates to the conduct of Mrs. Lundy, cannot be interpreted as clearly showing that she gave her "consent" to respondent's sale of the pistol to Franklin. Whether she did consent and if so, whether such consent constituted an intervening superseding cause which insulated respondent from his antecedent negligence as the proximate cause of the boy's injury, would be questions of fact for determination by the finder of the facts.

The conduct of Mrs. Lundy, if it constituted "consent," must be considered in the light of 2 Restatement, Torts 2d, § 442, (c), as to whether the asserted intervening force, i. e. Mrs. Lundy's conduct, operated independently of any situation created by respondent's negligence, "or, on the other hand, is or is not a normal result of such a situation;" also, in the light of 2 Restatement, Torts 2d, § 447, that the asserted intervening negligent act of Mrs. Lundy does not make it a superseding cause of harm to the boy which respondent's negligent conduct was a substantial factor in bringing about, if

(a) respondent, at the time of his negligent conduct, should have realized that Mrs. Lundy might so act, or

(b) a reasonable man, knowing the situation existing when Mrs. Lundy so acted, would not regard it as highly extraordinary that she so acted, or

(c) the asserted intervening act on the part of Mrs. Lundy was a normal consequence of a situation created by respondent's conduct, and the manner in which Mrs. Lundy acted was not extraordinarily negligent.

In other words, was the conduct of Mrs. Lundy extraordinary, or rather, was it a fairly normal response to the stimulus of the situation created by respondent? On the other hand, was her conduct an intervening force operating independently of the situation which respondent created? These theories are recognized in Scrivner v. Boise Payette Lumber Co., 46 Idaho 334, 268 P. 19 (1928), in language as follows:

"The principles to be drawn from the authorities are that, in order that a subsequent independent act of negligence

shall not displace a former one as the proximate cause, or to constitute the first of two acts of negligence the proximate cause of an injury, it is necessary that the succeeding act of negligence should be so connected with the first in time and nature as to make it plain that the damage was the natural and probable consequence of the original wrongful act or omission, and that to establish this the original negligence must have been such that it must have been known to, or anticipated by, the original wrongdoer that, in the natural course of human conduct, a succeeding act of negligence was at least likely to be committed, or, as said in Lynch v. Nurdin, supra, [12 Q.B. (Ad. & E., N.S.) 29] it was extremely probable that some other person would unjustifiably set in motion the dangerous instrumentality or negligent condition created by the original wrongdoer, and thus cause an injury." 46 Idaho at pages 345–346, 268 P. at 22.

The summary judgment of dismissal is reversed and the cause remanded with instructions to reinstate the action. Costs to appellants.

McFADDEN, C. J., and McQUADE and TAYLOR, JJ., concur.

KNUDSON, J., sat at the argument but retired from office prior to the decision.